2004-NMCA-019

84 P.3d 1056

Joe VALLES, Richard Kirschner, Bob McCannon, and Robert Pratt, Plaintiffs–Appellants,

v.

Paul L. SILVERMAN, Geltmore, Inc., Richard B. Saylor, Albert Kolb, Gloria Kolb, Sylvia Mock, Paul Tulenko, Valdemar Peterson, Darlene Garrett, Dawn Gastaldo, Merrill B. Thomas, and H. Ernestine Thomas, Defendants,

Wal–Mart Stores, Inc., Defendant–Appellee.

No. 23,174.

Court of Appeals of New Mexico.

Dec. 12, 2003.

Certiorari Denied, No. 28,442, Jan. 29, 2004.

Jane Gagne, Philip B. Davis, Albuquerque, NM, for Appellants Joe Valles, Richard Kirschner, and Bob McCannon.

Eric Scott Jeffries, Brian A. Thomas, Jeffries & Rugge, P.C., Albuquerque, NM, for Appellant Robert Pratt.

Charles R. Peifer, Cerianne L. Mullins, Peifer, Hanson & Mullins, P.A., Albuquerque, NM, for Appellee.

*OPINION*

CASTILLO, Judge.

{1} The issue we address in this case is whether a defendant can be liable for malicious abuse of process when that defendant was not a party (a non-litigant) in the underlying civil lawsuit. We hold that in certain limited circumstances, a non-litigant may be liable for civil malicious abuse of process. We further hold that the complaint in this case contains sufficient allegations to state a claim for malicious abuse of process against Defendant Wal–Mart Stores, Inc., (Wal–Mart), a non-litigant in the underlying lawsuit. Finally, we hold that the allegations in the complaint are sufficient to state a claim for civil conspiracy against Wal–Mart. We therefore reverse the trial court's dismissal of the claims against Wal–Mart. We remand for further proceedings consistent with this opinion.

## I. BACKGROUND

{2} This lawsuit, brought by Plaintiffs Joe Valles, Richard Kirschner, Bob McCannon, and Robert Pratt, is the latest in a series of lawsuits arising from the proposed West Bluff Shopping Center (Project) in Albuquerque, New Mexico. Geltmore, Inc., a developer and a co-defendant in this lawsuit, sought to develop the Project. The single largest store in the Project was to be a Wal–Mart Superstore. Plaintiffs all live near and within neighborhood associations that opposed the development. Plaintiffs participated in Albuquerque's zoning and City Council meetings and argued that the Project failed to comply with existing land use plans and zoning regulations. Plaintiffs appealed the City Council's approval of the Project first to the district court and then to this Court. This Court upheld the district court's approval of the City Council's decision in *West Bluff Neighborhood Association v. City of Albuquerque,* 2002–NMCA–075, 132 N.M. 433, 50 P.3d 182, *overruled on other grounds by Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n,* 2003–NMSC–005, ¶ 16, 133 N.M. 97, 61 P.3d 806.

{3} Geltmore, Inc., and ten individual property owners then sued Plaintiffs in a nine-count complaint for misuse and violation of the Nonprofit Corporation Act, NMSA 1978, §§ 53–8–1 to –99 (1975, as amended through 1999); misuse and violation of the Albuquerque Neighborhood Association Recognition Ordinance, Albuquerque Code §§ 14–8–2–1 to –7 (rev'd 1994); violations of the New Mexico Unfair Practices Act, NMSA 1978, §§ 57–12–1 to –22 (1967, as amended through 1999); malicious abuse of process; negligent misrepresentation; fraudulent misrepresentation; fraud and false pretenses; prima facie tort; and conspiracy. *See Saylor v. Valles,* 2003–NMCA–037, 133 N.M. 432, 63 P.3d 1152. Wal–Mart was not a party in *Saylor* (underlying lawsuit). This Court affirmed the district court's dismissal of the underlying lawsuit for failure to state a claim upon which relief can be granted. *See id.* ¶ 26.

{4} While *Saylor* was on appeal with this Court, Plaintiffs filed this most recent lawsuit against Geltmore, Inc., Wal–Mart, and eleven other defendants (collectively "Defendants") for malicious abuse of process and civil conspiracy. Plaintiffs allege that Defendants filed the underlying lawsuit to discourage public opposition to the Project. Plaintiffs contend that the underlying lawsuit was a Strategic Litigation Against Public Participation, or a "SLAPP" suit. They also contend that many allegations made by Defendants in the SLAPP suit were false and that Defendants knew or should have known of the falsehoods at the time they filed the SLAPP suit. Although Wal–Mart was not a party in the underlying lawsuit, Plaintiffs argue that Wal–Mart initiated the lawsuit because it "supported, encouraged and funded litigation against [Plaintiffs] in retaliation for their petitioning activities."

{5} Wal–Mart moved to dismiss the claims against it, arguing that (1) it could not be liable for malicious abuse of process because it was a non-litigant in the underlying law-

suit; (2) even if a non-litigant could be liable for malicious abuse of process, Plaintiffs' complaint is insufficient as a matter of law because it fails to allege the requisite elements of a claim for malicious abuse of process against Wal–Mart; and (3) it could not be liable on Plaintiffs' conspiracy claim because the complaint does not state a claim against Wal–Mart for the predicate tort, malicious abuse of process. The district court granted Wal–Mart's motion and dismissed all of the claims against Wal–Mart with prejudice.

## II. DISCUSSION

### A. Standard of Review

 {6} The claims against Wal–Mart were dismissed under Rule 1–012(B)(6) NMRA 2003 for failure to state a claim upon which relief can be granted. Whether the trial court properly dismissed the claims is a question of law, which this Court reviews de novo. *See Padwa v. Hadley,* 1999–NMCA–067, ¶ 8, 127 N.M. 416, 981 P.2d 1234. "[A]ll well-pleaded factual allegations" are accepted as true, and all doubts are resolved "in favor of the sufficiency of the complaint." *Id.* The only question is "whether the plaintiff might prevail under any state of facts provable under the claim." *N.M. Life Ins. Guar. Ass'n v. Quinn & Co.,* 111 N.M. 750, 753, 809 P.2d 1278, 1281 (1991).

### B. Malicious Abuse of Process Claim

 {7} Our Supreme Court first recognized the tort of malicious abuse of process in *DeVaney v. Thriftway Marketing Corp.,* 1998–NMSC–001, ¶ 14, 124 N.M. 512, 953 P.2d 277, when it combined the torts of abuse of process and malicious prosecution. The elements of malicious abuse of process (the tort) are as follows:

> (1) the initiation of judicial proceedings against the plaintiff by the defendant; (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (3) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (4) damages.

*Id.* ¶ 17. Wal–Mart contests the adequacy of the complaint as to the first three elements. We address each element in turn.

### 1. Initiation of Judicial Proceedings

#### a. New Mexico Precedent

{8} Wal–Mart claims that Plaintiffs' complaint fails to allege, and cannot allege, that Wal–Mart initiated judicial proceedings because it was not a litigant in the underlying lawsuit. Plaintiffs, on the other hand, argue that Wal–Mart may be liable under the tort, even though it was a non-litigant, because it actively participated in procuring the underlying lawsuit. Wal–Mart responds that our Supreme Court in *DeVaney* rejected the theory of active participant liability.

{9} The principle of "active participation" is set forth in the Restatement of Torts in the context of "Wrongful Use of Civil Proceedings." Restatement (Second) of Torts § 674 (1977) [hereinafter Restatement]. Section 674 provides that "[o]ne who takes an active part in the initiation, continuation or procurement of civil proceedings" may be liable for the wrongful use of civil proceedings. *Id.* Wal–Mart contends that New Mexico has not "adopted this statement of law with regard to abuse of process-type claims" because even though our Supreme Court cited to Restatement § 674 in *DeVaney,* 1998–NMSC–001, ¶¶ 11, 44, 124 N.M. 512, 953 P.2d 277, it failed to adopt that section or to approve the principle of "procurer liability."

{10} We do not agree with Wal–Mart that our Supreme Court specifically rejected the active participant theory in *DeVaney.* To the contrary, the only portion of Restatement § 674 that the Court specifically rejected was the requirement that the underlying proceeding be terminated in the plaintiff's favor. *DeVaney,* 1998–NMSC–001, ¶ 23, 124 N.M. 512, 953 P.2d 277. The issue of whether a party can be liable as an "active participant" never arose in *DeVaney* because in that case, the defendant in the malicious abuse of process claim was the party who actually filed the underlying lawsuit. *Id.* ¶ 6.

{11} In *DeVaney,* our Supreme Court noted that the formerly recognized tort of malicious prosecution required "initiation of [judicial] proceedings." *Id.* ¶ 15. But a review of

our state's jurisprudence on malicious prosecution makes clear that the "initiation" element never required that the defendant be a party in the underlying, often criminal, proceeding. *See, e.g., Hughes v. Van Bruggen,* 44 N.M. 534, 538–39, 105 P.2d 494, 497 (1940) (holding that whether or not the criminal proceedings were initiated by the defendant depends on whether the defendant's actions were the determining factor in the decision to prosecute or if the defendant knowingly furnished the official with false information); *cf. Johnson v. Weast,* 1997–NMCA–066, ¶ 20, 123 N.M. 470, 943 P.2d 117 ("[M]erely providing information that is not false to the authorities does not initiate proceedings ... if the decision to proceed is left to the discretion of ... the prosecutor and the absence of falsity allows the prosecutor to exercise independent judgment."); *Zamora v. Creamland Dairies, Inc.,* 106 N.M. 628, 633, 747 P.2d 923, 928 (Ct.App.1987) ("A defendant cannot be held liable for malicious prosecution [in an underlying criminal case] unless he took some active part in instigating or encouraging prosecution."). Nor is there any indication from our Supreme Court in *DeVaney* or in the subsequent malicious abuse of process case, *Weststar Mortgage Corp. v. Jackson,* 2003–NMSC–002, 133 N.M. 114, 61 P.3d 823 [hereinafter *Weststar*], that it intends to alter the meaning of "initiation of proceedings" from that formerly applicable in claims of malicious prosecution.

{12} Wal–Mart argues, however, that there is no precedent for extending non-litigant liability to an underlying civil lawsuit. We are not persuaded that the lack of precedent limits the application of the active participant theory to underlying criminal lawsuits. Indeed, the lack of precedent may be explained on two grounds. First, the tort of malicious prosecution was rarely available based on an underlying civil proceeding because of the need to allege and prove special damages. *See, e.g., Landavazo v. Credit Bureau,* 72 N.M. 456, 457, 384 P.2d 891, 891 (1963) (rejecting claim of malicious prosecution in the absence of any allegations that either the plaintiff was arrested, his property was seized, or he suffered "damages different from those necessarily incident to most if not all litigation"). Furthermore, the tort of abuse of process did not have an initiation requirement. *See Farmers Gin Co. v. Ward,* 73 N.M. 405, 409, 389 P.2d 9, 12 (1964) (distinguishing abuse of process, which requires evidence of an act "after the commencement of the action," from malicious prosecution, which requires evidence that "the action was maliciously commenced" against the plaintiff without probable cause); *Westland Dev. Co. v. Romero,* 117 N.M. 292, 293, 871 P.2d 388, 389 (Ct.App.1994) ("Abuse of process requires (1) the existence of an ulterior motive and (2) an act using process other than that process which would be proper in the regular prosecution of the charge.").

{13} Wal–Mart further argues that this Court's dismissal of the malicious abuse of process claim in *Saylor* indicates our unwillingness to recognize malicious abuse of process claims brought by or against non-litigants in the underlying lawsuit. Wal–Mart has incorrectly interpreted *Saylor.* In *Saylor,* this Court held that the plaintiffs could not state a claim for malicious abuse of process because they had not been sued in the underlying litigation. *Id.* ¶¶ 14–15. We rejected the plaintiffs' contention that an interested party under Rule 1–074 NMRA 2003 is a "formal party defendant" for purposes of a malicious abuse of process claim because the plaintiffs cited no authority supporting this proposition. *Saylor,* 2003–NMCA–037, ¶¶ 15–16, 133 N.M. 432, 63 P.3d 1152. The requirement that a plaintiff claiming malicious abuse of process must have been named as a defendant in the underlying proceeding is consistent with the very purpose of the tort of malicious abuse of process, that is, to compensate a plaintiff who was compelled to incur the costs of defending below. *See DeVaney,* 1998–NMSC–001, ¶¶ 36–38, 124 N.M. 512, 953 P.2d 277. A party who was never named as a defendant in the underlying proceeding could not then claim that it was compelled to incur defense costs in the underlying proceeding.

{14} Finally, Wal–Mart argues that non-litigant liability in the criminal context should be distinguished from non-litigant liability based on an underlying civil proceeding. It contends that non-litigant liability is needed for an underlying criminal proceeding be-

cause, otherwise, a wrongfully prosecuted party might be without recourse, due to prosecutorial immunity. Wal–Mart argues that in underlying civil cases, immunity is not an issue because civil cases are "filed and maintained by the real parties in interest and by persons who can be held responsible for them." Wal–Mart may be correct that in this case, Plaintiffs have a remedy by seeking recourse against Geltmore, Inc., and the other plaintiffs in the underlying lawsuit. However, Wal–Mart's theory does not recognize the possibility that a non-litigant may be orchestrating and funding the underlying civil lawsuit and may present the only possible source of monetary recovery. *Cf. Alexander v. Unification Church of Am.*, 634 F.2d 673, 675–78 (2d Cir.1980) (holding that although the named plaintiffs in the underlying litigation were church members, the church itself could be liable on the abuse of process claim because the church paid all litigation expenses and would have received any award in the underlying litigation), *abrogation on other grounds recognized by PSI Metals, Inc. v. Firemen's Ins. Co.*, 839 F.2d 42, 43 (2d Cir. 1988).

■ {15} We do not interpret the initiation requirement for non-litigant liability for malicious abuse of process in underlying civil lawsuits as narrowly as Wal–Mart does. Nor do we read *Weststar, DeVaney*, or *Saylor* as creating a rule of law that a non-litigant in a civil lawsuit cannot be liable for malicious abuse of process. We reject Wal–Mart's argument that whenever a malicious abuse of process claim is based upon an underlying civil (as opposed to criminal) proceeding, a plaintiff must show that the defendant initiated, by actually filing, the underlying lawsuit. We also disagree with Wal–Mart's argument that recognizing non-litigant liability will impermissibly broaden the tort to include potential liability for those who are merely friends and supporters of the litigant. We believe that sufficient restrictions will serve "to protect the important interest of access to the courts, thereby preventing any chilling effect on the legitimate use of process" while "allow[ing] victims of groundless suits to obtain adequate redress." *DeVaney*, 1998–NMSC–001, ¶¶ 18, 36, 124 N.M. 512, 953 P.2d 277. We hold that a non-litigant may be liable under the tort only if the non-litigant is an active participant in the underlying civil proceeding. We next discuss the parameters of active participation.

### b. Parameters for "Active Participation" by a Non-litigant in the Initiation or Procurement of an Underlying Civil Proceeding

{16} New Mexico has not addressed the conduct necessary to find active participation in the initiation or procurement of civil proceedings. There is clear direction, however, regarding the types of activity required to establish liability in initiating or procuring criminal proceedings. *See, e.g., Weststar*, 2003–NMSC–002, ¶¶ 12–14, 133 N.M. 114, 61 P.3d 823 (noting that a non-litigant who furnishes false information to the prosecuting authority may be liable for initiating criminal proceedings but rejecting this Court's theory that by itself, the furnishing of information, persuasion, or even pressure would be sufficient for liability); *Hughes*, 44 N.M. at 538–39, 105 P.2d at 497 (stating that for a private person to be held responsible for initiating a criminal proceeding, it must appear that the person's "direction, request, or pressure of any kind was the determining factor in the [public] official's decision to commence the prosecution"); *Zamora*, 106 N.M. at 633, 747 P.2d at 928 (reiterating that a private person cannot be liable "for the initiating of proceedings by a public official [unless] his desire to have the proceedings initiated ... was the determining factor in the official's decision to commence the prosecution or that the information furnished by him upon which the official acted was known to be false") (emphasis, internal quotation marks, and citations omitted). Moreover, our Supreme Court, in *DeVaney*, set out the common policy considerations for the formerly recognized abuse of process and malicious prosecution claims and emphasized the confines of the new malicious abuse of process tort.

Both torts are designed to offer redress to a plaintiff who has been made the subject of legal process improperly, where the action was wrongfully brought by a defendant merely for the purpose of vexing or injuring the plaintiff, and resulting in dam-

age to his or her personal rights. Further, both torts represent an attempt to strike a balance between the interest in protecting litigants' right of access to the courts and the interest in protecting citizens from unfounded or illegitimate applications of the power of the state through the misuse of the courts.

. . . .

Meaningful access to the courts is a right of fundamental importance in our system of justice. Because of the potential chilling effect on the right of access to the courts, the tort of malicious prosecution is disfavored in the law. Thus, we must construe the tort of malicious abuse of process narrowly in order to protect the right of access to the courts.

*DeVaney,* 1998–NMSC–001, ¶¶ 14, 19, 124 N.M. 512, 953 P.2d 277 (citations omitted).

 {17} The narrowness of the tort, the policy considerations behind it, and New Mexico cases dealing with initiation and procurement of criminal proceedings provide guidance. We also look to other jurisdictions that have already considered what constitutes active participation in the initiation or procurement of civil proceedings. We agree that more is required for active participation than encouragement, advice, or consultation. *See Kirsch v. Meredith,* 211 Ga.App. 823, 440 S.E.2d 702, 703 (Ga.Ct.App.1994) (holding that a non-litigant who merely reviewed information and provided an expert affidavit, at the request of the plaintiffs in the underlying civil lawsuit, was at most a "passive participant" and not liable); *Chapman v. Grimm & Grimm, P.C.,* 638 N.E.2d 462, 466 (Ind.Ct. App.1994) (determining that evidence failed to establish that non-litigants did more than encourage or advise the party to file the underlying civil proceeding); *see also Weststar,* 2003–NMSC–002, ¶ 12, 133 N.M. 114, 61 P.3d 823 (holding that reporting an incident and cooperating with prosecution are not sufficient as a matter of law to establish that the defendant "initiated the criminal proceedings"); *but see Walford v. Blinder, Robinson & Co.,* 793 P.2d 620, 625 (Colo.Ct.App.1990) (holding that a non-litigant actively instigated an underlying civil proceeding when the non-litigant "gave . . . input" on the facts of the case; was "specifically consulted with"; and although initially against the lawsuit, "participated in the ultimate decision" to file it). Other jurisdictions require the non-litigant to have induced another to bring the lawsuit, by urging or insisting that the lawsuit be brought; they have found active participation when the non-litigant is the primary catalyst or the determining factor in the decision to file the lawsuit. *See, e.g., Checkley v. Boyd,* 170 Or.App. 721, 14 P.3d 81, 91–92 (2000) (deciding that a person who is the "primary catalyst" for the suit may be liable for its commencement and finding that allegations that the underlying civil suit would not have been brought without the non-litigants' active encouragement, coercion, and pressure were sufficient to withstand dismissal); *see also* Restatement, *supra,* § 653 cmt. f; *id.* § 674 cmt. b; *cf. Williamson v. Guentzel,* 584 N.W.2d 20, 24–25 (Minn.Ct.App.1998) (determining that there was no evidence that the non-litigant insisted or urged that the underlying civil lawsuit be filed). We therefore hold that a non-litigant may be found to have actively participated in the initiation or procurement of a civil proceeding if the non-litigant's conduct was the determining factor in the decision to file the lawsuit.

### c. Adequacy of Complaint

 {18} Wal–Mart claims that even if a non-litigant in the underlying lawsuit could be liable in theory, the allegations in the complaint fail to state a claim against Wal–Mart for malicious abuse of process. Rule 1–008 NMRA 2003 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Our standard is one of notice pleading: "[G]eneral allegations of conduct are sufficient, as long as they show that the party is entitled to relief" and are sufficiently detailed to give the parties and the court a fair idea of the plaintiff's complaint and the relief requested. *Schmitz v. Smentowski,* 109 N.M. 386, 389–90, 785 P.2d 726, 729–30 (1990). A motion to dismiss is "properly granted only when it appears that the plaintiff cannot recover or be entitled to relief under any state of facts provable under the claim." *Las Luminarias of the N.M. Council of the Blind v. Isengard,* 92 N.M. 297, 300,

587 P.2d 444, 447 (Ct.App.1978) [hereinafter *Las Luminarias*]. Applying these principles, we find that the allegations in Plaintiffs' complaint are sufficient, albeit barely, to state a claim against Wal–Mart for malicious abuse of process.

{19} Only five paragraphs of the complaint contain allegations of specific action or involvement on the part of Wal–Mart. Those allegations are as follows:

5. Defendant Wal–Mart Stores, Inc. ["Wal–Mart"] is a foreign corporation authorized to do business in the State of New Mexico, and does business in New Mexico.

. . . .

12. The primary and largest business planned for the Project is Defendant Wal–Mart's Wal–Mart Superstore.

13. Defendants Silverman, Geltmore, Wal–Mart, and Saylor each has a substantial financial interest in the Project.

. . . .

31. On information and belief, Defendant Wal–Mart funded the [underlying lawsuit] in substantial part.

32. On information and belief, Defendant Wal–Mart sanctioned, encouraged, and participated in the [underlying lawsuit].

{20} In addition to the above five paragraphs, allegations against all of the Defendants, including Wal–Mart, read as follows:

45. Defendants' improper purpose in bringing the [underlying lawsuit] against Plaintiffs was to intimidate, harass, extort cooperation, frighten, silence, and retaliate against Plaintiffs so that Plaintiffs would dismiss their Rule 1–074 Appeal, and cease their public opposition to the Project.

46. Defendants' further improper purpose in bringing the [underlying lawsuit] was to send a message, to chill, deter, and otherwise extort cooperation from other citizens who, like the Plaintiffs whom Defendants targeted, from engaging in lawful opposition to the Project, or to future similar real estate developments.

. . . .

65. Defendants intentionally initiated the [underlying lawsuit] against Plaintiffs, and abused the judicial process, with an improper purpose to intimidate [and] frighten . . . Plaintiffs . . . without any reasonable belief whatsoever in the validity of the allegations of fact or law of the [underlying lawsuit].

{21} However, Plaintiffs further allege that Defendant Silverman "was the controlling and dominating force in the [underlying lawsuit]." There is no such similar allegation against Wal–Mart.

{22} Wal–Mart argues that these allegations are insufficient to state a claim that Wal–Mart initiated judicial proceedings against Plaintiffs because the complaint fails to allege (1) that the non-litigant actively urged or insisted that the lawsuit be filed and (2) that the litigant was not already contemplating the lawsuit. In particular, Wal–Mart points to the absence of allegations that it was the determining factor in the decision to file the underlying lawsuit or that it caused the underlying lawsuit to be filed.

{23} We disagree with Wal–Mart that the litigant in the underlying lawsuit must not have contemplated the lawsuit or that "but[ ]for" the non-litigant's suggestion, the lawsuit would not have been filed. *But see Chapman*, 638 N.E.2d at 466 (determining that the evidence did not indicate that the non-litigants encouraged or advised the litigant to bring any action that the litigant was not already contemplating). Indeed, a non-litigant may serve as the primary catalyst in the lawsuit by providing the critical funding for the suit, even though another party had the initial idea for, or was the controlling or dominating force in, the suit. We agree, however, that Wal–Mart's conduct must have been the determining factor in the filing of the underlying lawsuit. *Cf. Williamson*, 584 N.W.2d at 25 (stating that liability for procuring initiation of a lawsuit may be established by a party insisting or urging that a suit be filed but that mere advisement or supplying information is insufficient for liability).

{24} Contrary to Plaintiffs' contention in their brief-in-chief, the complaint never specifically alleges that Wal–Mart was a participant by procuring the suit. Likewise, the allegation that Wal–Mart "sanctioned [and]

encouraged" the underlying lawsuit, if interpreted as alleging that Wal–Mart supported the underlying lawsuit by offering verbal encouragement, is insufficient to state a claim that Wal–Mart initiated the underlying lawsuit. However, there is also an allegation that Wal–Mart funded the underlying lawsuit in substantial part. The allegations together could be interpreted as stating a claim that Wal–Mart played an active role in initiating the underlying lawsuit by providing the funding without which the suit would not have proceeded. *See Sierra Blanca Sales Co. v. Newco Indus., Inc.,* 84 N.M. 524, 538, 505 P.2d 867, 881 (Ct.App.1972) (aggregating the two claims of fraud and holding that in the aggregate, they were alleged with sufficient particularity to avoid dismissal). If this is the case, Wal–Mart could very well have been the determining factor, and its conduct would satisfy the requirement for active participation. Therefore, based on our liberal standard of notice pleading, we must uphold the complaint. *See Dunn v. McFeeley,* 1999–NMCA–084, ¶ 20, 127 N.M. 513, 984 P.2d 760 (denying a motion to dismiss if the allegations in the complaint "could support a cause of action"); *Stock v. Grantham,* 1998–NMCA–081, ¶ 24, 125 N.M. 564, 964 P.2d 125 (denying a motion to dismiss if relief is available "under any state of facts provable under the claim") (internal quotation marks and citation omitted). We remind Plaintiffs that it must still be determined, following discovery, whether there is sufficient evidence that Wal–Mart's participation was the determining factor. If the evidence is not sufficient, Wal–Mart has the option of pursuing summary judgment.

### 2. Remaining Elements

{25} The second element for malicious abuse of process is an "act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim." *DeVaney,* 1998–NMSC–001, ¶ 17, 124 N.M. 512, 953 P.2d 277. This is the "overt act" requirement. *See id.* ¶ 18. Wal–Mart argues that the complaint does not allege any overt act by Wal–Mart in the underlying lawsuit because Wal–Mart did not draft the pleadings or file the underlying lawsuit. However, Plaintiffs do allege that

all of the Defendants initiated the underlying lawsuit without "any reasonable belief whatsoever in the validity of the allegations of fact or law." They further allege that Defendants "knew or should have known that [the allegations] were false." These allegations are sufficient for the second element. *See id.* ¶ 22 (concluding that the overt act requirement may be met by showing the underlying lawsuit was filed without probable cause, that is, without a reasonable belief that a claim can be established).

{26} The third element of malicious abuse of process is "a primary motive by the defendant in misusing the process to accomplish an illegitimate end." *Id.* ¶ 17. Plaintiffs allege that Defendants improperly brought the lawsuit "to intimidate, harass, extort cooperation, . . . and retaliate against Plaintiffs so that Plaintiffs would dismiss their Rule 1–074 Appeal." We find the complaint sufficiently alleges the third element. Because there are sufficient allegations for each of the elements of malicious abuse of process, we hold that the lawsuit may proceed.

### C. Civil Conspiracy

{27} Civil conspiracy is not in itself a cause of action; it must be accompanied by a civil action against one of the conspirators. *Ettenson v. Burke,* 2001–NMCA–003, ¶ 12, 130 N.M. 67, 17 P.3d 440 (stating that civil conspiracy must involve an independent unlawful act that itself would give rise to a civil action); *Lindbeck v. Bendziunas,* 84 N.M. 21, 27, 498 P.2d 1364, 1370 (Ct.App.1972) ("[T]he basis for relief is not the conspiracy but the damages caused by acts committed pursuant to the conspiracy."). Wal–Mart suggests, without support, that Plaintiffs must be able to recover on the underlying tort against *every* coconspirator before that coconspirator can be liable for its part in the conspiracy. We disagree. Indeed, adoption of Wal–Mart's theory would defeat the purpose of civil conspiracy. *See Ettenson,* 2001–NMCA–003, ¶ 12, 130 N.M. 67, 17 P.3d 440 ("The purpose of a civil conspiracy claim is to impute liability to make members of the conspiracy jointly and

severally liable for the torts of any of its members."); *Adcock v. Brakegate, Ltd.*, 164 Ill.2d 54, 206 Ill.Dec. 636, 645 N.E.2d 888, 894 (1994) ("The function of a conspiracy claim is to extend liability in tort beyond the active wrongdoer to those who have merely planned, assisted or encouraged the wrongdoer's acts."), *abrogation on other grounds recognized by Burgess v. Abex Corp. ex rel. Pneumo Abex Corp.*, 311 Ill.App.3d 900, 244 Ill.Dec. 319, 725 N.E.2d 792, 795 (2000). Wal–Mart correctly states that it must be legally capable of committing malicious abuse of process to be held liable as a coconspirator. *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 28 Cal. Rptr.2d 475, 478, 869 P.2d 454 (1994) (en banc) (stating that "tort liability arising from conspiracy presupposes that the coconspirator is legally capable of committing the tort"). Wal–Mart is not, however, legally incapable of committing the tort; we therefore reject its conclusion that it cannot be held liable for conspiracy.

{28} Wal–Mart additionally argues that Plaintiffs' claim fails to allege sufficient facts necessary to support a conspiracy claim. In order to state a claim for civil conspiracy, Plaintiffs must allege "(1) that a conspiracy between two or more individuals existed; (2) that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and (3) that the plaintiff was damaged as a result of such acts." *Ettenson*, 2001–NMCA–003, ¶ 12, 130 N.M. 67, 17 P.3d 440 (internal quotation marks and citation omitted). The existence of the conspiracy must be pled either by direct allegations or by allegation of circumstances from which a conclusion of the existence of a conspiracy may be reasonably inferred. *Saylor*, 2003–NMCA–037, ¶ 25, 133 N.M. 432, 63 P.3d 1152; *Las Luminarias*, 92 N.M. at 300, 587 P.2d at 447. The complaint contains allegations that Defendants conspired with one another to bring the underlying lawsuit; that the improper purpose of the lawsuit was to intimidate, frighten, silence, and retaliate against Plaintiffs; and that Plaintiffs were damaged as a result of the wrongful acts. Further allegations from which we can infer the existence of a conspiracy claim are that Defendant Silverman was the controlling and dominating force in the underlying lawsuit, while Wal–Mart funded the lawsuit in substantial part, as well as sanctioning, encouraging, and participating in it. We find these allegations sufficient to state a claim for civil conspiracy against Wal–Mart. *See Ettenson*, 2001–NMCA–003, ¶ 12, 130 N.M. 67, 17 P.3d 440; *Las Luminarias*, 92 N.M. at 300, 587 P.2d at 447 ("The general policy of the Rules [of Civil Procedure] requires that an adjudication on the merits rather than technicalities of procedure and form shall determine the rights of the litigants.") (internal quotation marks and citation omitted); *Adcock*, 206 Ill.Dec. 636, 645 N.E.2d at 895 ("[A] plaintiff is not required to allege facts with precision where the necessary information to do so is within the knowledge and control of the defendant and unknown to the plaintiff.").

{29} Plaintiffs still bear the burden of providing sufficient evidence to support the conspiracy claim. *See Morris v. Dodge Country, Inc.*, 85 N.M. 491, 492, 513 P.2d 1273, 1274 (Ct.App.1973) ("The question [in determining the sufficiency of evidence for conspiracy] is whether the circumstances, considered as a whole, show that the parties united to accomplish the [tort]."). As with the claim of malicious abuse of process, Wal–Mart has the option of later pursuing a summary judgment motion.

## III. CONCLUSION

{30} We reverse the trial court's dismissal of the claims against Wal–Mart and remand for further proceedings in accordance with this opinion.

{31} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, Chief Judge, and LYNN PICKARD, Judge.